AYRES, Judge.
' By this action plaintiff sought to recover of his former employer workmen’s compensation at the maximum statutory rate provided for total and permanent disability, less compensation previously paid, and for penalties prescribed for arbitrary discontinuance of compensation, as well as for attorneys’ fees. Plaintiff’s claim is predicated on an alleged disability following injuries sustained in an accident of March 22, 1963, while he was engaged as a manual laborer in maintenance and repair work at defendant’s paper mill. The defendant admitted plaintiff sustained accidental injuries which resulted in temporary disability and for the duration of which compensation was paid, and contended that plaintiff no longer suffered injury or sustained disability particularly resulting from the accident occurring while plaintiff was in its employ.
The trial court, in written reasons for judgment, concluded not only that plaintiff failed to establish that the condition of *2 which he complained was brought on by the accident but that plaintiff had completely recovered from the effects of the accident and was no longer unable to do manual labor as fully as before the accident. From a judgment accordingly rejecting plaintiff’s demands, he prosecutes this appeal.
No issue is presented as to the manner of the occurrence of the accident. Plaintiff, at the time about 19 years of age, while engaged with other laborers in replacing machinery referred to as a drier, in defendant’s paper mill, slipped and fell, whereupon he bounced on and off rollers through a distance estimated at 12 feet, when he was caught and his fall checked by fellow employees. It was alleged that his back and buttocks struck rollers and machinery as he descended.
Immediately following the accident plaintiff was admitted to the Morehouse General Hospital where he was first seen, examined, and treated by Dr. Joseph Michaud. Plaintiff remained in the hospital until March 26, 1963, when he was discharged, but thereafter continued under Dr. Michaud’s treatment until April 18, 1963, when he was pronounced able to return to the performance of his work. Shortly thereafter, he reported for work, but the task for which he had been originally employed had been completed and additional work was unavailable. Soon thereafter, plaintiff engaged counsel who referred him to Dr. Roy H. Ledbetter, Jr., an orthopedist, for examination. The doctor’s initial examination was made May 8, 1963, and treatment was administered by him thereafter until the date of trial, November 19, 1964.
Beginning in the summer of 1963 and continuing for a year, plaintiff was employed by Holsum Bakery in Bastrop, Louisiana. His daily duties included the unloading from a larger truck and reloading to smaller trucks some 500 to 1,000 boxes of bread weighing approximately 18 pounds each. In addition, plaintiff serviced his employer’s trucks, washed and greased them, changed tires thereon, and swept and cleaned the building. No complaint of pain, discomfort, or inability to do his work was made during the entire period of this employment. His work was satisfactory. Moreover, before he was employed, he was required to take a physical examination which he passed and was certified as fit for employment. No report of the accident or complaint of any continuing disability was made to the examining physician.
Thereafter, plaintiff was employed as a radio repairman or technician in Harvey, Louisiana. While so engaged, he was involved in a motor-vehicle collision in which he again sustained injuries. On the day following that accident, plaintiff sought medical attention, in the course of which he was advised to stop work immediately. Because of disabilities allegedly sustained in that accident, plaintiff was paid compensation, payment of which continued, at least, to the date of trial of this action.
At the instance of defendant, plaintiff was examined by Dr. Ray E. King, an orthopedist, March 13, 1964, and by Dr. William V. Gamier, a general practitioner, July 2, 1964. Their testimony, with that of Drs. Michaud and Ledbetter, comprises the medical testimony introduced in this case.
The basis of plaintiff’s claim for continuing disability is the prevalence of a spondylolisthesis at the level of the fifth lumbar vertebra. As to the existence of this abnormality, the medical experts are in agreement. The consensus, however, extends to the proposition that the spondylo-listhesis is of congenital origin, having no causal relationship with the accident sustained by plaintiff in defendant’s employ. No point or issue is made with reference to this conclusion. Plaintiff’s counsel, in brief, states:
“Admittedly, this condition from which Mr. Rich suffers was not entirely caused by the accident in question. The medical evidence indicates *3 that the condition was either congenital in origin or that it developed over a long period of time during childhood. The accident might have caused some additional displacement of the vertebrae, but probably did not cause the large amount of misalignment shown in the x-ray.” (Emphasis supplied.)
Spondylolisthesis was described as a forward slippage of one vertebral body on another, due to congenital defects of that part of the vertebra known as the pars in-terarticularis, occurring most often at the lumbosacral joint, the source of pain of which is an impingement upon the nerve roots radiating out from that level.
The displacement in this instance was said to be about Yz of an inch and characterized as a first — , or possibly bordering on a second — , degree of a possible fourth-degree displacement where the displacement of one vertebra on another is complete.
The consensus of the medical experts is also to the effect that a slippage of a vertebra in the case of a spondylolisthesis produces severe, acute, and excruciating pain immediately following the occurrence. We ■are impressed too; there may be a remission when the vertebra regains its normal position, and also a recurrence when again •displaced, which would be followed by pain in a manner and of the severity form■erly experienced when the condition may have become initially manifest.
In the instant case, there is no showing of pain of an acute and excruciating nature immediately following the accident, nor at ■any time since. Nor is this failure to experience immediate pain accounted for by the fact that plaintiff sustained a chip fracture of the right acetabulum. (We may point out, however, that the fact that the fracture was of recent origin was discounted in the medical testimony.)
The pain experienced was not of the type or of the severity as invariably accompanies a spondylolisthesis. Too, it would appear, with reference to an injury to one side of the hip, such as a fracture of the acetab-ulum, that pain would be referred to that side, while, in the case of a spondylolis-thesis, pain would radiate down the spine and into both sides. The pain experienced in the instant case was not shown to be of the latter type.
A further consensus of the medical experts was that the spondylolisthesis had neither been caused nor aggravated by the accident; three of the experts so testified; one testified to the contrary. In the same degree of preponderance, the consensus was that plaintiff was no longer disabled, but could perform the same character of work he performed before the accident.
In taking into consideration the nature and character of work actually performed by plaintiff for more than a year following the accident involved, without any complaint or report of pain, discomfort, inconvenience, or inability to perform all the duties thereof, we not only fail to find manifest error in the conclusions reached by the trial court, that plaintiff was fully able to perform his former duties, but are constrained to the same opinion.
The principle is well established in the jurisprudence of this State that a claimant in a workmen’s compensation case, as in other actions, is required to establish his case by a preponderance of evidence to a legal certainty. Of his failure in this respect, we are convinced, as was the trial court. Speculation, conjecture, possibilities, and unsupported probabilities are insufficient to support a judgment.
The judgment appealed is therefore affirmed at plaintiff-appellant’s cost.
Affirmed.